Herb Sundy v. Michael Amend I would like to begin my comments by addressing the two issues raised by the court in the recent order which I believe was entered on the 23rd of February. This has to do with whether or not this court has jurisdiction over Mr. Caldwell's attempt to appeal from the district court's grant of summary judgment to Don Lamb. I'd like to supplement several of basically my argument that I set forth in my government's reply brief. It seems to me the rule regarding filing a timely, proper notice of appeal is jurisdictional and mandatory. The Supreme Court has said that in Browder. They said that in Torres. And in fact, Torres was a rather harsh result that ultimately led to an amendment to Rule 3 of the Federal Rules of Appellate Procedure. Now, having said that, I'm certainly aware of a number of cases, in the Ninth Circuit especially, but throughout the country where appellate courts have nevertheless liberally construed attempts by appellants to appeal from an adverse decision. Now, it seems like in the cases go both ways. Sometimes the cases will just simply deny appellant jurisdiction out of hand. In other cases, and in many cases, the court seems to focus on the intent. What was the intent of the appellant given what they did or what they failed to do? Now, in this case, Mr. Caldwell's intent was crystal clear. You have in Mr. Caldwell's excerpt of record, you have his notice of appeal. He is very specific about the issues that he wants to raise on appeal. And all of those issues have to do with the defendant, Michael Ammon. Nowhere does Mr. Caldwell express any intent to appeal from the summary judgment that was entered in favor of defendant Don Lamb. So I think in this case, there really is no problem here because this court doesn't have to try to divine, if you will, what Mr. Caldwell's intent. His intent was clear from the nature of the notice of appeal. The second issue the court raised was whether or not, if he'd accept jurisdiction, whether or not the district court correctly ruled in favor of Don Lamb. I've addressed that in my reply brief. I really don't have a lot to add to that. You don't have before you the actual briefs that were filed in connection with Don Lamb's motion for summary judgment. You do have the court's opinion, of course. The briefs, if the court cares to review those, the defendant's brief appears at Clerk's Record 278, I believe it is. But the court did not address all four issues that I raised in the motion for summary judgment.  The court's ultimate decision to grant summary judgment was a simple statute of limitations application. In this case, the facts are clear. The Van Strom case sets forth the rule to be applied in Bivens cases. In Mr. Caldwell's situation, since he was a prison inmate at the time that the cause of action accrued, which was back in August of 1983, then he gets to take advantage of the Oregon revised statute, which provides for an extension of the statute of limitations for a period not to exceed five years. So as I pointed out in our brief, Mr. Caldwell missed the statute of limitations by some two years or so. So it's our position that this court does not have jurisdiction over Don Lamb because Mr. Caldwell failed to properly, timely file his notice of appeal. And secondly, even if you find that you do have jurisdiction, we feel that the court was correct in dismissing the case because of the statute of limitations. Now, under Rule 55E, which doesn't come up that often, to be honest, and there's not a lot of guidance on that. There's not. The issue we have to decide is whether a prima facie case has been presented. And your argument is, well, it couldn't be because there was a factual issue on summary judgment. I'm not sure that those are mutually exclusive. In other words, if he had not presented some form of a prima facie case, wouldn't there have been summary judgment granted against him? Even if there's a factual issue, doesn't he have to get by the prima facie case to survive summary judgment first time around? Well, as I pointed out, the court in the last appeal, Judge Marsh, granted summary judgment initially in favor of Ammon and two other FBI agents. That case went up on appeal. We know all that. The question is, you know, in the Ninth Circuit, it basically says that the record demonstrates that Mr. Ammon was aware that the currency wasn't linked to a bank robbery and that he had possession and control over it at a time when Mr. Caldwell wanted his money back. Right. So is that enough? Is that a prima facie case, in other words? I do not believe it is. We tried to address that on our brief, and here's why I think it is not, make that a prima facie case. To get past the Rule 55's bar to a default judgment, the plaintiff has to establish a right to relief. And it's not simply pointing out that, for example, there may or may not be a factual dispute. Now, I do disagree with the Court of Appeals' last opinion, because since that case was decided, the Supreme Court decided Cass v. Saussure, where the Court held that just because you have a factual dispute doesn't mean that summary judgment should be denied. In this particular case, there's more to this, to Rule 55's requirements, than simply making out this particular factual dispute that occurred. The plaintiff must still show that his constitutional rights, accepting his version of the facts as true, as we must, the plaintiff must still show that he's entitled to relief. And it's our position that, based upon the facts as he alleges them, that Mr. Hammond did not violate the Constitution. And that's our argument. It has to be more than just showing that there is somehow this factual dispute. And I think Mr. Caldwell reads more into the, of course, decision, the Court of Appeals' decision, which, of course, was followed by Judge Haggerty, reads more into it than it's entitled to, because the statement, which is interesting, because we've pointed out that Mr. Caldwell really had no way of knowing what one agent told another agent when they were searching his house, because he wasn't there. But let's assume for the moment, we've never challenged the fact that this currency, as of the 15th, August 15th, when Michael Hammond returned to Maryland, there's no question that at that point the investigation was still proceeding and that the officers had not been able to specifically tie that currency to any robbery. We don't contend otherwise. We concede that was the case. What is the, what puzzles me about it, why are we doing this? What, the government stiffed the courts repeatedly. What was going on? Why does the government beg for interpretation favorable to us, from us, on this Rule 55 dispute, when the government is, you know, fighting a self-inflicted wound? Well, it's our, it's our position, and I, we've not tried to defend the procedural defaults, if you will, that occurred here. Our position is simply that Rule 55 assumes that a procedural default has occurred. It's our position that the plaintiff, nevertheless, must establish a right to recover under his theory. That may be, but Jim Pooley is not new authority, and that was on there on the books as of 1980, and says, look, I mean, if the government isn't going to cooperate in this, then they can be treated, it can't be a default judgment, but if there's a prima facie case, then the government can be held. It's not a default judgment. It's essentially a sanction that you don't get to put on your, the rest of your case, and that's what Judge Haggerty did here. So you're saying we should make these, this distinction that you're, you're arguing for about what constitutes a prima facie case to take the government off the hook here, where it deliberately flaunted the court orders? Well, it's our position that the mere default, failing to file the answer, is not sufficient. Well, no, Judge Haggerty didn't, he didn't, he didn't rule that. He didn't say that that was all that was going on. He said that he invoked the rule and went one step further. So the government wasn't being punished for the default. It was simply being held to the rules, as I read Judge Haggerty's opinion. I see my time is up. If I could just respond to that one question. Please do. If in fact the government was presented, prevented from presenting evidence or a defense as a sanction, if you will, nevertheless, if you look at the evidence in this case, the plaintiff failed to establish a violation of his constitutional rights, and he failed to prove that Ammon's violation caused him recoverable damage. Thank you. May it please the court, counsel, I wish to thank you for the opportunity to speak and present my case. As to the notice of appeal, there's no prejudice to the defendant's appellants because both parties were specifically cited. The notice was timely filed, although it does omit the specific summary judgment motion. Nonetheless, the order appealed from, the final order is cited. It was mere inadvertence and aptitude that caused me to omit the summary judgment portion. I had originally written out two drafts in longhand because I didn't have access to a typewriter. And when two other cases were in the forefront of my consciousness and when I got to the typing area where I could actually type the notice of appeal, I had the first draft, and that was the one that I typed, and it was the omission. The result was because of that. The issue was briefed in my brief, and Mr. Sundby had an opportunity to respond in his last brief as to the summary judgment motion. The defendant's appellates are not prejudiced at all, and this Court's holdings as well as the practice rules indicate that the content of the notice of appeal is not fatal to jurisdictional exercise by the Court. As to the issue as to whether or not summary judgment was properly granted, I think that Mr. Sundby submitted to the Court below the wrong statute. The one that's operable is the tolling statute, which this Court, in a prior decision, bought the chief of police, city of Portland, indicated clearly that a party who is incarcerated can file an amended complaint or initial complaint within the period of the statute of limitations or one year after the disability, in my case imprisonment, ceased. And also Rule 15 of the Federal Rules of Appellate Procedure allow an amended complaint to be referred back to the original timing of the first. So I think that it was timely, and certainly based on the facts, Mr. Lamb should be held liable for his actions. See, if we applied the BOARD case, as you indicate, that gives you, what, a year? Are you within the year? I thought it was two years. No, it's one year after the disability ceases. But I thought, did you file within one year after your... Oh, I filed before I got out of jail. Let me ask you, Mr. Amond was in control of the money for about three days, is that correct? Three or four days. Let's say three or four days. So I'm having some trouble trying to understand the extent of the alleged constitutional violation. Let's just say Mr. Lamb were to fall out, and we weren't dealing with Mr. Lamb, but we just had Mr. Amond. How can he be held liable for the entire time that the currency was held up? Well, the court should realize that 15 months prior to the actual seizure, the U.S. Marshals Service and the FBI had investigated intensively. The FBI was in contact with the Marshals Service concerning bank robberies, and they investigated and found that there was no bank robberies on the record. That was before Judge Hagerty. There's been no discovery in this case. I had to get that material from the FBI through the Freedom of Information Act request. So that indicated that they knew or should have known that I was not, on the record, involved with any bank robberies. So now they come to August 10 where they seize the money. That very evening when the money was seized, the FBI agent, Jerry Wilson, informs them there's no affirmative link of this currency to any crime or bank robbery. Then within the next day, I have an interview with both Mr. Amond and Lamb. I tell them the same thing. Of course, they probably were not likely to believe you as much as, I guess the question is, did they have the information from the FBI at that point? They should have. They were in close contact. They were searching for me. The FBI was also searching for me. It's interesting also to note that really the U.S. Marshals Service does not have jurisdiction over bank robbery investigations. That's exclusively under the ambit of the FBI's jurisdiction. So to me, it's a red herring when they keep saying, we need this money because we're investigating for bank robberies. The true reason, in my opinion, was they didn't want me to have my resources. And that's the constitutional violation. They knew it wasn't a result, a fruit of a crime. They knew it before I was ever arrested. And when they got the money, they decided to hide it for 15 months. My attorney, Mr. Shuhart, came on board September 26, 1983. All he got was a constant runaround. He wrote to the Marshals. He wrote to the FBI.  He wrote to the U.S. Attorney's Office. Okay. Well, I guess that kind of brings back to my other question is your brief lays all that out quite nicely. My question really is Mr. Ahman's role. Since he didn't have the money after August 14th, is he still responsible for the fact that they hid it and gave you the runaround  Well, in an affidavit submitted in March of 2000 by Mr. A declaration, actually, by Mr. Ahman, he says that he, Mr. Lamb, and Jerry Wilson decided to take the money and go to Portland with him. So that indicates that there was annoying agreement between those parties, two of which are defendants. I tried to get Mr. Wilson involved, but the court saw fit to resolve him of liability. Was there ever any attempt in this case to resolve the whole monetary claim through the mediation process in the Ninth Circuit? Mr. Sundby indicated after Judge Marsh asked about settlement. Mr. Sundby said in a hearing that he was not interested in settling the case. So, in other words, it didn't go through the Ninth Circuit mediation process? No, ma'am. All right. Any other questions? All right. Thank you. Thank you. I'll give you one minute for rebuttal if you need it. I just have one point I'd like to make. The statute we're talking about is ORS 12.160. I'm assuming the court has read that. Mr. Cromwell is incorrect in his reading of that statute. The statute provides for a maximum extension of five years or one year after the release from prison if that one year occurs earlier. So it's a five-year ultimate extension, if you will. So in this particular case, the statute expired, as I stated in my brief, in 1998. The complaint was not filed until 2000. Thank you. Can I make one brief point? Yes, you may make one last point. I don't know. I saw the blog, and it said that within the applicable statute of limitations or within one year of the date of the termination of the disability, whichever is later. We'll take a look at the Portland case, and we'll also take a look at the statute cited by the U.S. attorney. Thank you. All right. Thank you. The case of Caldwell v. Amend is submitted. Next case for argument, White v. Palmatier.
judges: Goodwin, McKeown, Fisher